IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JACQUELINE WEBSTER, ET AL. | * | |
| | * | |
| v. | * | Civil Action No. 98-647 |
| | * | |
| WILLIAM HENDERSON | * | |

*****

**MEMORANDUM**

Three employees of the United States Postal Service ("USPS") allege that their assignment to the Blair Support Center as clerks processing mail was an act of discrimination and violated the Rehabilitation Act, 29 U.S.C. § 791, and the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (1994). Defendant USPS has moved for summary judgment. The motion will be granted.

I.

In fall of 1994, the Silver Spring postmaster, John Duchesne, established the Blair Service Center to sort bulk mail for first class mail accidentally placed there. USPS management believed that the Center would improve the timely processing of return-to-sender and undeliverable bulk mail, relieve overcrowding due to lack of space for storing unprocessed mail, and protect the security of the mail in close quarters, where other mail was being inadvertently mixed in with return-to-sender mail. USPS chose the Tacoma Park Station (also known as Blair Station) for this operation because although that station was housed in one of the oldest area post office buildings, it had a large work floor that had already been used for a similar centralization project, the processing of Express Mail.

To staff the Center, USPS selected limited and light duty personnel (those limited by medical or other conditions) in order to provide appropriate work for those individuals. Although generally

sufficient work had existed for such workers at the local post offices, occasionally "make work" was provided, and USPS wished to use the employees' time more productively.

The workers were transferred to the Center to ensure adequate work within their medical limitations, as was permitted under personnel rules as well as agreements with the American Postal Workers Union. Those rules and agreements provided that USPS could alter those workers' stations, scheduled work hours, and crafts in order to provide them with adequate work within their medical limitations.

The working conditions at the Blair Support Center were less than desirable. Plaintiffs worked in an old warehouse section with inadequate heating, broken windows, and cracked floors that were not quickly repaired even when complaints were made. No provisions were made for the increase in the number of parking spaces needed when the Blair Support Center was created. In addition, USPS chose to run the Blair Support Center on a modified night shift, from 2:00 AM until 10:30 AM, because those were the hours when allegedly the mail was available without making special "runs" from the other area post offices. Another theoretical benefit of this schedule was to permit mail sorted out at the Center to be returned to local stations if need be, again without using special runs. However, it appears that this benefit was seldom achieved in practice. Although workers were compensated with bargained-for night differential pay, they experienced reduced seniority and altered duty assignments. The changes were, however, consistent with their union bargained-for contracts with USPS.

Plaintiffs allege that the true reasons they were transferred to the Blair Support Center were that USPS officials believed that limited duty employees reduce productivity, affect the quality of

work, and harm other workers' morale by taking away lighter assignments. Plaintiffs also allege that the USPS was concerned about "malingerers" posing as disabled.

II.

In order to establish a claim, plaintiffs have the initial burden of showing a prima facie case of discrimination. Once such a case is made, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the action taken. Once such an explanation is set forth, plaintiffs must prove by a preponderance of the evidence that the legitimate, nondiscriminatory reasons set forth by defendant are mere pretexts for discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973).

Plaintiffs allege that USPS took adverse action against them by transferring them to the Center. Under Fourth Circuit precedent, reassignment can form the basis of a Title VII claim, but only under certain circumstances. In Boone v. Goldin, 178 F.3d 253 (4th Cir. 1999), the court ruled that the transfer of NASA employee to a wind tunnel was not an "adverse employment action" under Title VII, even though she might have experienced increased stress, since she did not suffer discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion. The court held that "reassignment can only form the basis of a valid Title VII claim if the employee can show that the reassignment had some significant detrimental effect on her. [However,] a change in working conditions may be a factor to consider in assessing whether a reassignment qualifies as an adverse employment action that could give rise to Title VII liability." Id. at 256; see also Mackey v. Shalala, 42 F. Supp. 2d 559, 567 (D. Md. 1999) (holding that a purely lateral transfer, one that does not involve a demotion in form or substance, or a transfer

3

involving no more than a minor change in working conditions, does not rise to the level of a materially adverse employment action).

Here, it may be assumed that plaintiffs have presented sufficient evidence to establish that their reassignment constituted an adverse employment action. While such issues as providing limited parking may be deemed trivial, a dramatic shift in working hours and the lack of heat could be found to be sufficiently significant to meet the standard set by the Fourth Circuit in Boone. USPS has, however, provided legitimate, nondiscriminatory reasons for the hours and location of the Center, and for using limited and light duty personnel. Overall, these personnel were sometimes being underutilized in local stations. Thier concentration at a central location was intended to maximize management's ability to provide adequate work within each individual's medical restrictions, while equalizing work loads and optimizing the utility of limited and light duty personnel.

Plaintiffs allege that this articulated reason for the establishment of the Blair Support Center is pretextual because defendant's true intent was to force limited and light duty personnel to resume regular work. This allegation is pieced together from deposition testimony or interrogatory answers often taken out of context or not even included in the exhibits provided, and largely unsubstantiated.[1] Furthermore, any postal employee is subject to reassignment to another location or another tour of duty as the USPS's need dictate, and the employees, through their union representatives, negotiated

---

[1] A memorandum from Michael M. Bensing, Postmaster, on December 6, 1996, includes the following statement: "If it appears that the number of ill or injured employees increases because of more favorable work hour/location [sic], then we will re-initiate the Blair Station as concentration point for all service center work." Pls.' Ex. 23, Memorandum from Michael M. Bensing, Postmaster, to Branch Managers (Dec. 4, 1996). While this would appear to show that the reduction of the number of non-legitimate limited duty personnel was a motivating factor at least in part, in fact, the memorandum was written by a subsequent postmaster not involved with the establishment and staffing of the Center.

the terms of such transfers for limited duty employees. These terms were followed in this case, even relating to the loss of seniority when transfers between crafts occurred. Without any solid evidence to the contrary, plaintiffs are unable to establish that the legitimate, non-discriminatory reasons advanced by USPS are a pretext for discrimination.[2]

For these reasons, defendant's motion for summary judgment will be granted.

March 17, 2000

J. Frederick Motz
United States District Judge

---

[2] Plaintiffs' claims under the Americans With Disabilities Act, 42 U.S.C. § 1211 et seq., are barred because the Act, by its very terms excluded the United States from the definition of "employer." See 42 U.S.C. §12111(2) and (5)(B)(I). Their claim that their assignment to the Center was designed to dissuade them from requesting accommodations and was in retaliation for their request for limited duty assignments is wholly unsupported by the record.